623 P.2d 1

**STATE of Arizona, Appellee,**

v.

**Jack Louis TRESIZE, Appellant.**

**No. 5014–PR.**

Supreme Court of Arizona,
En Banc.

Dec. 10, 1980.

Rehearing Denied Jan. 27, 1981.

572

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Asst. Atty. Gen., Phoenix, for appellee.

Alward & Goodman by Mark N. Goodman, Prescott, for appellant.

HAYS, Justice.

Defendant-Appellant Jack Louis Tresize and a codefendant, Jeff Weiss, were jointly tried and convicted by a jury of armed robbery, a class 2 felony. Appellant was sentenced to 15 years in the Arizona State Prison and from that sentence and conviction he appeals. Counsel, who was appointed to assist appellant in representing himself, raised a number of arguable questions of law for review in compliance with *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). The cumulative issues raised in both counsel's brief and appellant's supplemental brief and on rehearing have been considered by this court. We find no fundamental error in our search of the record, we vacate the Court of Appeals memorandum decision, and we affirm the trial court.

We granted appellant's petition for review primarily to address an issue which has not been previously addressed by this court regarding the application of the new sentencing provisions of A.R.S. §§ 13–701, 13–702 and 13–604. We take jurisdiction pursuant to A.R.S. § 12–120.24 and Rule 31.19, Rules of Criminal Procedure, 17 A.R.S. The relevant facts are discussed in the presentation of the issues on appeal.

I

THE SENTENCE IMPOSED WAS NOT EXCESSIVE

Both appellant and his counsel challenge the legality of the 15-year sentence imposed

by the trial court. This sentence exceeds the presumptive sentence for a class 2 felony involving the use of a deadly weapon, a dangerous offense, under our new criminal code § 13–702(C) and § 13–604(G), which is 10½ years.

■ First, appellant alleges that *State v. Biscoe,* 112 Ariz. 98, 537 P.2d 968 (1975), requires that there be an adjudication of fact establishing the validity of prior convictions. This was the rule under the "prior conviction statute," former A.R.S. § 13–1649, but this rule is limited to the case where the prior felony conviction is alleged to *enhance* a sentence. *State v. McGriff,* 7 Ariz.App. 498, 441 P.2d 264 (1968). Trial courts were permitted to consider the prior convictions as aggravating circumstances even though they were not established as required by law, provided the sentence imposed did not exceed the maximum authorized by the statute for the charged offense. *State v. Jackson,* 19 Ariz.App. 475, 508 P.2d 362 (1973). *Ponds v. State,* 7 Ariz.App. 276, 438 P.2d 423 (1968). Also, Arizona Rules of Criminal Procedure, rule 19.1, 17 A.R.S., written prior to the new code, requires that the prior conviction be alleged and proven only if it is to be introduced *at trial.* Here, the trial judge ruled in the preliminary hearing that because the State did not have certified copies of the prior convictions, they were not to be referred to at trial. The record reveals that no mention was made by the State of the priors at appellant's trial. To *enhance* a sentence based upon prior convictions, under the new scheme the State must still "make available to the defendant a copy of any material or information obtained concerning the prior." § 13–604(K). But here, the enhancement of appellant's sentence was based upon the use of a dangerous weapon in the commission of the robbery, not on the basis of his having been a repeat offender.

We must step through the applicable provisions of the new sentencing structure to determine the proper length of sentence. Robbery is classified as a class 4 felony, § 13–1902. When, in the course of committing a robbery a deadly weapon is involved, the crime is classified as a more serious class 2 felony. The length of imprisonment for the first offense of a class 2 felony is prescribed in § 13–701(B). It provides for a term of seven years, "except as provided in § 13–604." The exception is the applicable provision in this case. The relevant portion of § 13–604(G) reads:

"Upon a first conviction of a Class 2 or 3 felony involving use or exhibition of a deadly weapon or dangerous instrument ... the defendant shall be sentenced to imprisonment for not less than the sentence and not more than 3 times the sentence authorized in Section 13–701 ... Upon imposing a sentence pursuant to this subsection the court shall impose as a presumptive term three-fourths of the median of the allowable range ..."

Therefore, appellant's presumptive term is calculated as 10½ years with 21 years the maximum and 7 the minimum. Section 13–604(G) continues:

"The presumptive term may be mitigated or aggravated within the range prescribed under this subsection pursuant to the terms of Section 13–702, subsections C, D and E."

Section 13–702(C) allows for other than the presumptive term to be imposed only if the trial judge finds the circumstances alleged to be in aggravation of the crime to be true "upon any evidence or information introduced or submitted to the court prior to sentencing or any evidence previously heard by the judge at trial, and factual findings and reasons in support of such findings are set forth on the record at the time of sentencing." The presentence report contained such information: date, location, offense, and disposition of five prior felony convictions. The record of appellant's sentencing hearing sets forth the reason in support of the increased sentence:

"I have specifically considered, in aggravation, that you have five prior convictions; and therefore, as punishment it is ordered that you shall be incarcerated in the Arizona State Prison for a term of fifteen years."

Therefore, the judge in the case at bar has complied sufficiently with the statutory sentencing requirements.

■ Second, appellant alleges illegality in the sentence imposed because the State failed to cite in the indictment the statutory section governing the enhancement of sentences due to the involvement of a deadly weapon in the commission of the offense, § 13–604(G). Section 13–604(K) provides that:

"The penalties prescribed by this section shall be substituted for the penalties otherwise authorized by law if the previous conviction or the dangerous nature of the felony is charged in the indictment or information and admitted or found by the trier of fact. . . . 'Dangerous nature of the felony' means a felony involving the use or exhibition of a deadly weapon . . ."

Both requirements of the enhancement statute have been met. The indictment alleges the requisite dangerousness. It reads in pertinent part:

". . . JACK LOUIS TRESIZE'S taking or retaining the property while an accomplice was armed with a deadly weapon or used or threatened to use a deadly weapon or dangerous instrument, a pistol, in violation of A.R.S. § 13–1901, 13–1902, 13–1904, 13–701, 13–702 and 13–801."

Furthermore, the jury made the requisite finding of the use of a deadly weapon. At trial the two juvenile witnesses and the victim testified that a real gun was used. The jury was instructed that the crime of armed robbery required proof of two things:

"The Defendant committed a robbery: and, second, the Defendant or accomplice was armed with a deadly weapon or used or threatened to use a dangerous instrument.

"Deadly weapon means anything designed for lethal use. The term includes firearm."

The judge went on to define firearm and dangerous instrument. The jury weighed the evidence and found the appellant guilty of armed robbery. They must necessarily have concluded that the offense was a dangerous offense involving the use of a deadly weapon. There is no necessity that a *specific* factual finding be made:

"For a defendant to be sentenced under A.R.S. § 13–643(B), providing for special punishment where a gun is used in the commission of the robbery offense, it is not necessary that the court make a finding that a gun was used." *State v. Price,* 27 Ariz.App. 673, 678, 558 P.2d 701, 706 (1977).

We find no resulting prejudice or surprise from the omission of the citation to the enhancement section in the indictment.

■ Third, appellant claims he has been placed in double jeopardy based upon the use of a deadly weapon in classifying the crime as a more serious felony and, again, when considering the use of a gun to enhance the sentence within § 13–604(G). We have rejected such a contention in the recent decision of *State v. Bly,* 127 Ariz. 374, 621 P.2d 283 (1980). Therefore, we uphold appellant's sentence.

## II

## THE SHOWUP IDENTIFICATION OF APPELLANT WAS NOT UNDULY SUGGESTIVE

■ Mere suggestion in the identification procedure used does not constitute a due process violation. As stated in the Ninth Circuit, United States Court of Appeals decision, *United States v. Sambrano,* 505 F.2d 284, 286 (1974),

"Rather, in order to make out a constitutional violation, the suggestion must be so 'unnecessary' or 'impermissible' as to create a 'substantial likelihood of irreparable misidentification' based on the 'totality of the circumstances.' *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)."

A showup identification is admissible if the identification is reliable notwithstanding the suggestiveness. *State v. Trujillo,* 120 Ariz. 527, 587 P.2d 246 (1978). The factors

to evaluate in determining whether an identification is reliable have been set forth in *Neil v. Biggers, supra.* In applying the five enumerated factors to the facts in this case, we find that in the totality of the circumstances the identification was reliable.

## III

## NO RIGHT TO COUNSEL EXISTS AT A SHOWUP THAT OCCURS PRIOR TO THE INITIATION OF JUDICIAL PROCEEDINGS

■ Counsel for appellant urges that adversary proceedings were initiated against appellant at the point of arrest and therefore the denial of his right to counsel at the showup identification is in violation of his sixth amendment constitutional guarantees. *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). An arrest is not the equivalent of the initiation of criminal prosecutions; therefore, a right to counsel argument is inapposite. In appellant's case there had not yet been a complaint filed, nor a preliminary hearing, nor an indictment. Appellant relies heavily on *Moore v. Illinois,* 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977), but there a complaint had been filed and, under state law, the initiation of adversary judicial proceedings was commenced upon the filing of such a complaint. We apply the long-standing rule in Arizona to this case: "The law is quite clear in this area that pre-indictment lineups and showups are not a critical stage of the proceedings requiring the presence of counsel (citations omitted)." *State v. Schmidgall,* 21 Ariz.App. 68, 69, 515 P.2d 609, 610 (1973).

## IV

## THE DENIAL OF THE MOTION TO CONTINUE WAS PROPER

■ Appellant alleges error in the trial court's denial of his motion to continue. Appellant's reason at the time of the motion was that he was ill and had been denied all access to law books while in the county jail. Appellant's counsel also filed a motion to continue on September 6 (trial was set for September 11) stating that appellant had not had time to adequately prepare and that on September 5 they learned an alleged accomplice would testify. The standard applicable to the granting of a motion to continue was recently stated by this court in *State v. Laffoon,* 125 Ariz. 484, 485, 610 P.2d 1045, 1046–47 (1980):

> "A motion to continue will be granted upon a 'showing that extraordinary circumstances exist and that delay is indispensible to the interests of justice.' . . . A motion to continue will not be granted as a matter of right but will be left to the sound discretion of the trial judge (citations omitted)."

There was no prejudicial surprise in the discovery that the accomplice would testify since this witness' name had been disclosed in the State's hearing form filed a month before and since counsel for both sides were present at an interview with the witness on September 4. At pretrial conference appellant's counsel declared that he was ready to proceed. We can find no clear abuse of discretion in the judge's denial of the motion to continue.

## V

## THERE EXISTED PROBABLE CAUSE TO SUPPORT THE ARREST

■ Appellant urges that there existed insufficient probable cause to support a warrant for his arrest, that a search warrant was required by the fourth amendment and that therefore all subsequent acts by the police were illegal. *State v. Myers,* 117 Ariz. 79, 89, 570 P.2d 1252, 1262 (1977), instructs us that the police may make a full search of a person incident to a lawful custodial arrest and that an arrest is lawful without a warrant if there exists probable cause to believe a felony has been committed and probable cause to believe the person to be arrested has committed the felony. Here, the car and its occupants matched the description given by the victim to the officers. The officer driving the unmarked police car following the suspect's vehicle testified that after he had turned on his flashing lights, the suspect car accelerated and left a

trail of black smoke, that there was considerable movement in the vehicle, and that objects were thrown out of the passenger window throughout the pursuit. The match of the description and the officer's observations of the suspects' behavior constituted sufficient probable cause to legally support the warrantless arrest and subsequent search incident to the arrest.

## VI

### THERE WAS PRETRIAL DISCLOSURE

■ The appellant, *pro per*, contends that the State failed to disclose out-of-court statements of the codefendant and other witnesses that would tend to exculpate him. He cites in support, *Brady v. State of Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). That case involved the failure of the State to disclose exculpating evidence during the discovery stage when requested to produce it, not the failure to call a witness at trial, and therefore is inapplicable. Appellant could have called the witnesses at trial as part of his defense, but did not. The State complied fully with the pretrial disclosure requirements of Rule 15, A.R.S. Rules of Criminal Procedure. Further, the nondisclosed evidence must be material to the case, and if it would not have likely changed the verdict, a new trial is not required. *See State v. LaBarre*, 114 Ariz. 440, 446, 561 P.2d 764, 770 (1977). We find no material error.

## VII

### THERE EXISTS NO ERROR IN THE FAILURE TO SUPPRESS THE CO-DEFENDANT'S STATEMENT

Several statements were made by the codefendant following arrest. The trial court determined at the suppression hearing that all statements but the one immediately following arrest were to be suppressed. Codefendant did not testify at trial. The codefendant's voluntary statement, allegedly implicating the appellant as an accomplice, was elicited through the police officer's testimony at their joint trial.

Appellant's counsel relies on the recent United States Supreme Court decision, *Parker v. Randolph*, 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979), as authority for the position that the court erred in admitting codefendant's statement where the codefendant did not testify at trial, and where *no limiting instruction was given*. *Parker* is distinguishable from the case at hand because there the defendant also confessed, and the confessions were interlocking. Here, the appellant made no confession and did not take the stand. The Court in *Parker* reasoned that the rule in *Bruton* did not apply automatically. *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), has stood for the proposition that where the codefendant does not take the stand but his confession is admitted against the defendant, there is a sixth amendment right of confrontation violation. The limiting instruction given in *Bruton* to the jury that they must only consider the confession against the maker of the statement was held to be insufficient due to the "devastating effect" the statement had against the defendant in the joint trial. Declining to apply *Bruton*, the Court in *Parker*, 99 S.Ct. at 2138, stated:

> "In some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the codefendant's admission so insignificant by comparison, that it is clear beyond a reasonable doubt that introduction of the admission at trial was harmless error. (Cases cited in footnote): *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726 [23 L.Ed.2d 284] (1969), *Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056 [31 L.Ed.2d 340] (1972), *Brown v. United States*, 411 U.S. 223, 93 S.Ct. 1565 [36 L.Ed.2d 208] (1973).

The Arizona Court of Appeals has applied *Bruton* as qualified by *Harrington v. California, supra,* in *State v. Olivas*, 10 Ariz. App. 285, 458 P.2d 379 (1969). In *Olivas*, as in the instant case, the name of the defendant, Edward Olivas, was not directly mentioned in one of the codefendants' statements. The word "they," used in the codefendant's statement to describe the perpetrators, left room for inclusion of Edward.

But the word "they," since there was evidence of three perpetrators being involved, also could have referred to the codefendant himself and the other codefendant as being present without necessarily including the defendant. Other testimony at trial did establish defendant's presence at the scene and no testimony excluded his presence. The Court admitted the statements and, in holding they were not in violation of the *Bruton* rule, stated:

> "The statements cannot by any stretch of the imagination be said to be 'powerfully incriminating' ... The right of confrontation which is the basis of the *Bruton* rule is in essence the right to confront an accuser." *State v. Olivas*, 458 P.2d at 382.

Here, the codefendant's statement referred to "everybody" and "we" as being present at the scene of the crime in or near the getaway car while the robbery was being perpetrated by the juvenile male inside. The codefendant stated, "Well, we stood around for a minute and then Byron [male juvenile] went over there to the building to find out what was going on. I don't know. I stayed by the vehicle." Evidence established that the juvenile girl was lying in the front seat, unseen by the victim, that one man was leaning against the car, that the codefendant was in or around the car, and that the male juvenile was inside. Defense counsel asserts that since only three men were described by the victim as being present and since one was inside, the codefendant's statement referring to "we" as being by the car, implied that another, namely the appellant, was present. But the word "we" could refer to the codefendant and the girl who was present in the car, without referring to appellant. As was found in *Olivas*, we find here that the only statements remotely implicating appellant contained nothing specifically accusatory with respect to him.

Appellant's counsel offered in defense that the appellant was a hitchhiker who joined the suspects after the perpetration of the armed robbery. The only evidence introduced at trial supporting this defense was the testimony of the victim that at the identification procedure appellant stated to her that he was a hitchhiker, and the prior statement of the male juvenile robber to the deputies that appellant was a hitchhiker. The robber at trial though testified, inconsistently, that he had made the statement because appellant, prior to arrest, had instructed the suspects as to the hitchhiker alibi. Without the codefendant's statement, substantial evidence supports the appellant's conviction. The evidence introduced to establish appellant's defense of hitchhiking was dubious at best. The testimony of the two juvenile witnesses placed defendant at the scene of the crime. The juvenile boy, the robber, testified at trial that defendant had accompanied the group from Los Angeles and that the robbery was discussed along the way. The gun used was said to be appellant's and was fired by appellant at one point during the trip to Bagdad, the location of the robbery. The female juvenile witness' testimony was in accord with the male juvenile's. She stated that appellant was the one who told her to lie down in the front seat to avoid being seen. Also, the victim identified appellant three times as the one leaning against the car during the commission of the robbery. We find there was no prejudice in any violation of *Bruton* that may have occurred. It was harmless error beyond a reasonable doubt.

Having considered all the issues raised, we affirm the judgment of conviction and the sentence of the trial court.

STRUCKMEYER, C. J., HOLOHAN, V. C. J., and CAMERON and GORDON, JJ., concur.